UNITED STATES of America,
Plaintiff-Appellee,

v.

Kenneth Christopher MUELLER,
Defendant-Appellant.

No. 13423.

United States Court of Appeals
Seventh Circuit.

March 13, 1962.

Rehearing Denied April 24, 1962.

Dewey S. Godfrey, Jr., St. Louis, Mo., for appellant.

Carl W. Feickert, U. S. Atty., East St. Louis, Ill., Herbert J. Miller, Jr., Asst. Atty. Gen., Peter L. Hughes III, Attorney, Criminal Division, U. S. Department of Justice, Washington, D. C., for appellee.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Kenneth Christopher Mueller, defendant, has appealed from a judgment of the district court, convicting him of a violation of 18 U.S.C.A. § 2113(a), charging him with unlawfully entering the Union National Bank, East St. Louis, Illinois, a member of the Federal Reserve System, with intent to commit in said bank a felony, to-wit: larceny. Trial was by jury.

■ The government's evidence tended to prove the facts which we set forth.

Said bank's janitor, Suttles, on January 2, 1961 arrived at the bank, found a light on and smoke in the premises. He locked the door and reported to the police. About the same time, a police patrol car noted a person in the parking lot in the rear of the bank near a drive-in bank structure. The person fled on foot, pursued by officer Baker. Despite warning shots, the fugitive continued to run and was seen to throw an object on the ground. He was captured behind a service station after running about 225 yards. Being then identified as defendant herein by officer Briggs, he was searched and dropped on the ground a key, which he said was his house key. Defendant was flushed and perspiring and his clothing and face were drenched with sweat. He was "well dressed" and wearing a topcoat. Later it was found that this house key opened both the inner and outer front

doors of the bank.[1] A physical examination of the bank premises also disclosed that the drive-in building was open and inside was a quantity of tools and acetylene torches for cutting of metal, the area was smoky, and two holes were found to have been cut in the night depository safe. An hour later two hospital-type oxygen tanks were found in the bank parking lot. In the bank building the safe was warm to the touch, and the contents were smoldering. Agent Moehle gathered from the floor near the safe metal debris resulting from the cutting.

A tank regulator found at the scene was owned by the McDonald Construction Company where defendant had worked several months previously. It was also shown that he had done construction work in their employment. In the topcoat and trousers of defendant, which were scientifically examined, there were found a multitude of magnetic steel "slag balls," whose chemical composition was similar to those taken from the bank floor by Agent Moehle. No element of metal present in the one was lacking in the other, and they were described as "both similar in composition."

Defendant did not take the stand or offer evidence in the case.

1. Defendant contends that there was a failure of proof on the vital issue of whether defendant entered the bank on January 2, 1961. The foregoing facts, judged in a light most favorable to the government, presented to the jury a sufficient factual basis for the verdict of guilty. There was no failure of proof in this regard.

2. Defendant attacks the jurisdiction of the district court in this case inasmuch as the meaning of "a bank" as referred to in 18 U.S.C.A. § 2113(a), is provided by subparagraph "f" in these words:

"As used in this section the term 'bank' means any member bank of the Federal Reserve System, and any bank, banking association, trust company, savings bank, or other banking institution organized or operating under the laws of the United States, and any bank the deposits of which are insured by the Federal Deposit Insurance Corporation."

The cashier and operating officer of the Union National Bank, Lewis Englehard, testified, in part, that Government's Exhibit 1, the certificate of stock ownership in the Federal Reserve System, was a "replacement" for a previously held certificate; that there was a reissue of the certificate because of increased stock purchases of Federal Reserve stock on January 31, 1961, by reason of an increase in the bank's capitalization from $300,000.00 to $600,000.00. Six per cent of the increase had to be invested in the Federal Reserve bank as required by law.

Defendant concedes that this evidence shows that the Union National Bank was a member bank on February 7, 1961 (the date of said certificate), but he maintains that it fails to prove anything about prior dates, except that the bank owned an uncertain amount of stock in the Federal Reserve Bank on the date of the break-in.

Six per cent of the $300,000 increase is $18,000, or 180 shares of stock. This reveals that there was a total of 780 shares held on February 7, 1961, of which 600 had been held before the increase. Inasmuch as the testimony shows the existing certificate was a replacement, the plain implication is that the certificate replaced, which was in effect on January 2, 1961, showed that the Union National Bank then held a member status as a federal reserve system bank.

This jurisdictional attack on the district court is not well-founded.

3. Finally, defendant argues that, in the trial of this case, numerous errors in the admission of evidence allowed improper matters to be presented to the jury so that the jury was prejudiced against the defendant, and he was deprived of a fair trial.

In arguing in support of this proposition, his counsel, in effect, catalogs in considerable detail the results of the

1. It was found not to fit any door lock at defendant's home.

very intelligent and effective investigative work which was applied by officers of the law in developing the clues which were left at or near the bank building by the burglar. However, the very efficiency and thoroughness of the work of these officers evolves into the basis for counsel's contention that, in effect, they were too good for the best interests of the defendant.

Counsel has been unable to convince us that this method of preparing a case for trial either prejudiced the jury against the defendant or deprived him of a fair trial.

For all these reasons, the judgment from which this appeal has been taken, is affirmed.

Judgment affirmed.